

**SIGNED this 04th day of March, 2013.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-61151-CAG |
| | § | |
| BARRY JOE PLEDGER, | § | |
| | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| RATLIFF READY-MIX, L.P., | § | |
| | § | |
| Plaintiff, | § | ADV. NO. 12-6005-CAG |
| | § | |
| v. | § | |
| | § | |
| BARRY JOE PLEDGER, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Came on for consideration on February 7, 2013, Defendant's Amended Motion for

Reconsideration (ECF No. 68) of the Court's Oral Ruling Granting Plaintiff's Motion for Partial

Summary Judgment (ECF No. 35) and Denying Defendant's Motion for Summary Judgment

1

(ECF No. 29).  The Court finds that the Motion should be GRANTED and ORDERS the following relief:

BACKGROUND

Defendant, the president of Pledger Construction Company ("Pledger Construction"), filed his Chapter 7 petition on October 18, 2011 (Bankr. Case, ECF No. 1).  On January 23, 2012, Plaintiff—a Texas limited partnership and concrete supplier—filed an adversary proceeding against Defendant and asked the Court to find that certain debts owed to Plaintiff by Defendant were nondischargeable under 11 U.S.C. § 523(a)(2), (4), and (6) (Adv. Proceeding, ECF No. 1).  The debts arise from Defendant's alleged failure to pay Plaintiff for concrete supplied in Defendant's construction projects (*Id.*).  Plaintiff then moved for partial summary judgment, claiming it was entitled to judgment as a matter of law under Section 523(a)(4) because, under Texas law, Defendant breached a fiduciary duty when Defendant received full payment on three of its construction projects yet failed to pay Plaintiff for the supplied concrete (ECF No. 32).  Defendant filed his own Motion for Summary Judgment (ECF No. 29) seeking judgment on all counts.

The Texas statute in question (the "Texas Construction Trust Fund Statute") creates a constructive trust on funds general contractors receive when they are paid in full for construction projects.  *See* Tex. Prop. Code Ann. §§ 162.001-161.003 (West 2012).  Under the statute, a general contractor acts as trustee of the funds, and the subcontractors, who provided labor and materials for the projects, are to receive those funds as beneficiaries.  *Id.*  It is therefore a breach of fiduciary duty if the general contractor is paid in full but chooses not to pay the subcontractors for labor or materials supplied.  *Id.* at § 162.031(a).  It is an affirmative defense, however, to use the trust funds to pay "actual expenses directly related" to the particular construction project for

2

which the general contractor was paid.  *Id.* at § 162.031(b).  Plaintiff argued at hearing that the evidence showed Defendant received full payment for three construction projects for which Plaintiff supplied concrete.  Plaintiff, however, was never paid in full.

At hearing, Defendant admitted he did not pay Plaintiff for the work performed, but argued that Plaintiff did not meet its burden of proof to show how Defendant spent the money once he received it.  Further, Defendant argued that he used the proceeds from the construction projects to pay general expenses of the corporation, a use he claims is permissible under the Fifth Circuit case *In re Nicholas*.  956 F.3d 110 (5th Cir. 1992).  In *Nicholas*, the plaintiff, a subcontractor that supplied plumbing materials, never received payment for the supplies, even though the defendant, the general contractor, was paid in full for the projects.  *Id.* at 111.  The Fifth Circuit held in this case that the failure to pay was not a violation of the statute because the plaintiff failed to provide evidence that funds were misapplied under Texas law.  *Id.* at 114.  The court also noted that the Texas statute "permits application of trust fund receipts for 'actual expenses directly related' to the project."  *Id.*  Defendant also pointed to the Fifth Circuit's statement that the Texas Construction Trust Fund Statute does not require "create red, blue, and yellow dollars each of which can only be used for the red, blue, or yellow construction project" as further evidence that funds can be comingled and used to pay general expenses of the corporation without violating the statute.

This Court looked to an opinion from the District Court for the Western District of Texas that applied *Nicholas* to the Texas Construction Trust Fund Statute.  ***Aguado Stone v. Wissen,*** Cause No. A-07-CA-506-LY (W.D. Tex. Mar. 11, 2008).  In *Aguado Stone*, the plaintiff provided stone for the defendant's various construction projects.  *Id.*  Despite being paid in full for each construction project, the defendant failed to pay the plaintiff for the stone provided.  *Id.*

The defendant testified that he used construction payments to pay "expenses of his business, without regard to the particular project that generated the income," and that he did so "in an attempt to keep his construction business alive." *Id.* The defendant claimed this use of funds allowed him to seek safe harbor under the Texas Construction Trust Fund Statute's affirmative defense. *Id.* The District Court found that the defendant's use of funds on other construction projects was a violation of the Texas Construction Trust Fund Statute, and therefore found the defendant's debts to be nondischargeable. *Id.*

In an oral ruling issued on December 18, 2012, this Court followed the District Court's approach in *Aguado Stone* and found that Plaintiff provided enough evidence to prove that Defendant was paid in full for three separate construction projects yet never paid Plaintiff for the concrete provided in those projects. The Court also found sufficient proof that Defendant spent the funds received from the projects on general expenses of the corporation, a violation of the Texas Construction Trust Fund Statute according to *Aguado Stone*. Finally, the Court found that Defendant did not provide any evidence to avail himself the affirmative defense of paying "actual expenses directly related" to the construction. Accordingly, the Court ruled Defendants' debts nondischargeable and granted Plaintiff's Motion for Partial Summary Judgment while denying Defendant's Motion for Summary Judgment.

Defendant filed his Amended Motion for Reconsideration on January 2, 2013, asking the Court to reconsider its decision and claiming that *Aguado Stone* incorrectly applied both the Texas Construction Trust Fund Statute and the *Nicholas* decision. The Court held a hearing on February 7, 2013, and took the matter under advisement.

### PARTIES' CONTENTIONS

Both parties have represented to the Court numerous times that there is no factual issue in

4

dispute.  The parties both agree that Defendant was paid in full for its construction projects on which Plaintiff supplied concrete.  The parties also agree that Defendant, despite being paid in full, did not pay Plaintiff for the concrete.  The issue at hand, therefore, is purely a legal one.  All that remains for the Court to determine is whether Defendant's use of the funds to pay expenses such as telephone bills, salaries, and other overhead constitutes "actual expenses directly related" to the construction projects under Section 162.003.

**DISCUSSION**

A.    <u>Legal Standard for Modification of Judgment</u>

Rule 59 of the Federal Rules of Civil Procedure—applicable to bankruptcy cases under Federal Rule of Bankruptcy Procedure 9023—allows a court to modify or amend its prior judgment.  *Id.* at 59(e).  "Any error of law, if prejudicial, is a good ground for a new trial."  11 Charles Alan Wright, et al., Federal Practice and Procedure § 2805 (2008) (citing ***Colegrove v. Cameron Machine Co.,*** 172 F.Supp.2d 611, 632 (W.D. Pa. Oct. 23, 2001) (citations omitted)).  Reconsideration of a judgment, however, "is an extraordinary remedy that should be used sparingly."  ***Templet v. Hyrdochem Inc.,*** 367 F.3d 473, 479 (5th Cir. 2004).  Such reconsideration only "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  *Id.* Motions for new trial or to amend judgment "are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.* at 478-79 (internal citations omitted).

The Court recognizes that all plaintiffs in a nondischargeability proceeding carry the burden of proof.  ***Nicholas,*** 956 F.2d at 114.  The court in *Nicholas* applied the burden to plaintiffs even though the defendants were seeking the shelter of an affirmative defense.  *Id.*

5

Plaintiffs must therefore "adduce some evidence that funds were misapplied under the test." *Id.* This Court, in its oral ruling, found that Plaintiff did adduce some evidence that funds were used on general expenses of the business. The Court also notes that both parties acknowledge there is no factual issue in dispute. Therefore, despite the Court's statements regarding the burden in its oral ruling, the Court is of the opinion that the burden of proof on the facts of this case has been met. Either one party or the other is entitled to judgment as a matter of law.

B.     History of The Texas Construction Trust Fund Statute

The original Texas Construction Trust Fund Statute stated that it was a misapplication of trust funds for general contractors to divert funds away from subcontractors only if they did so "with intent to defraud." *Nicholas*, 956 F.2d at 111-12; *Boyle v. Abilene Lumber, Inc.*, 819 F.3d 583 (5th Cir. 1987). The Fifth Circuit noted that the original statute could create a cause of action under 11 U.S.C. § 523(a)(4). *Boyle,* 819 F.2d at 592. The Circuit, however, required a showing of intent to defraud at the time diversion of trust funds. *Id.* Further, under the statute, diversion constituted a breach of fiduciary duty only if the diversion was wrongful at the time it was made. *Id.*

The Texas legislature amended the statute in 1987 to broaden the scienter requirement. *Nicholas*, 956 F.2d at 111-12; *see* Tex. Prop. Code Ann. § 162.031(a). It is now a misapplication of trust funds if funds were diverted by the trustee "intentionally or knowingly or with intent to defraud." *Id.* The 1987 amendments also added the "actual expenses" affirmative defense articulated in Section 162.031(b). The Fifth Circuit acknowledged in *Nicholas* that these amendments "expanded the realm of debts that are nondischargeable under the Bankruptcy Code." *Id.* The court, however, affirmed the bankruptcy court's decision to find the debts in the case to be dischargeable. *Id.* at 114. The bankruptcy court noted that "all of the money"

6

received from the construction project "went into the operation of the business." *Id.* Further, the case did not involve "an individual who took money from the contractor . . . for his own use or some frivolous use not connected with the operation of [the] business." *Id.* While the Fifth Circuit did not expressly adopt the bankruptcy court's language in its opinion, it did ultimately decide that the plaintiff failed to "adduce some evidence that funds were misapplied" under the statute and affirmed the bankruptcy court's decision. *Id.*

Another bankruptcy court for the Western District of Texas considered the issue of the Texas Construction Trust Fund Statute after both the 1987 amendments and the *Nicholas* decision. **In re Faulkner**, 213 B.R. 660 (Bankr. W.D. Tex. 1997). The bankruptcy court noted that the statute "is to be construed broadly to effectuate the remedial purpose for which it was enacted." *Id.* at 668. When examining the affirmative defense of using trust funds to pay "actual" and "direct" expenses, the bankruptcy court noted that those adjectives "strongly indicate[] that . . . more 'indirect' payments, such as overhead to the contractor in question, or 'profit' built into the job's price, would not so qualify." *Id.* at 668. Examining the legislative history, the bankruptcy court stated that it appeared that, while employing a part-time bookkeeper to monitor the progress of a particular job might be an "actual and direct" expense, the monthly expense of a telephone operating across the entire business would not. *Id.* (citing Tex. Atty. Gen. Op. JM-945 (1988)). Under the Attorney General's opinion, an indirect cost only qualifies under the affirmative defense if the expense is "necessary to obtaining or completing the [particular] job." *Id.* The payments at issue in *Faulkner* were compensation to the owners of the entire general contractor business. *Id.* The defendant argued that the compensation could be tied to particular jobs, and therefore should be allowed as "actual and direct" expenses. The bankruptcy court rejected this theory for the following reason:

7

> Were we, in fact, to read chapter 162 as the defendant to read chapter 162 as the defendant suggests, there would be very little of a contractor's expenses that would *not* be sheltered by § 162.031(b). The exception would quickly swallow the rule. All the money spent by a debtor in the construction business would become expenses that fall into the exception created by § 162.031(b). We simply do not believe that the Texas Legislature, in enacting § 162.031 ever intended to eviscerate the Texas Construction Trust Fund statute in this manner, and therefore reject the [defendant]'s proffered interpretation.

*Id.* at 669. Although the court in *Faulkner* ultimately declined to find the debts in the case nondischargeable, the court also declined to adopt the defendant's interpretation of Section 162.031(b).

The District Court for the Western District of Texas followed this approach in *Aguado Stone*. Case No. 07-CV-00506-LY. The defendant used funds received from a construction project to "pay expenses of his construction business, without regard to the particular project that generated income." *Id.* Indeed, the evidence presented showed that the defendant used proceeds to pay expenses "on other construction projects that were not projects for which [the plaintiff] supplied the product." *Id.* (emphasis removed). The court, noting that the 1987 amendments to the Texas Construction Trust Fund Statute "broadened the scope for finding a misapplication of trust funds," found that the defendant's actions violated the statute and that the debts arising out of the misapplication of funds were nondischargeable under Section 523(a)(4).

It is in consideration of the above history and interpretation of the Texas Construction Trust Fund Statute that this Court examined the evidence in the present case. Defendant claimed in deposition testimony and affidavits that, once he received money for construction projects, he used the funds to pay truck payments, telephone bills, and payroll. Further, Defendant admitted that, on one of the projects, he was paid in full but did not use those payments on expenses related to that project, but spent them elsewhere in the corporation. Considering the expansion of the statute's applicability, and in the interest of consistency with this Court's own District, the

8

Court found this use of funds to be a violation of the Texas Construction Trust Fund Statute, and therefore the debts owed to Plaintiff constituted a nondischargeable debt under  523(a)(4).

C.      *In re Swor*

In his Amended Motion to Reconsider, Defendant cites the Fifth Circuit's recent opinion on Section 162.031, **In re Swor**, 347 Fed.Appx. 113 (5th Cir. 2009).  In *Swor*, the debtor was a small business that filed for Chapter 11 but subsequently converted to Chapter 7.  *Id.* at 115.  The owners of the business (the "Swors") "infused over $106,000 of their personal funds into the business and made numerous financial sacrifices to keep the business afloat."  *Id.* (quoting **In re Swor**, 2008 WL 938940 (Bankr. S.D. Tex. Apr. 4, 2008)).  When the debtor began experiencing financial difficulty, the Swors began diverting funds from the corporate accounts to pay themselves.  347 Fed.Appx. at 115.  When the debtor filed bankruptcy, it owed more than $8,000 to a subcontractor that supplied construction hardware.  Although the debtor was paid in full for the project in which the subcontractor supplied the hardware, the debtor did not pay the subcontractor for the materials.  *Id.* The subcontractor filed a nondischargeability action alleging breach of fiduciary duty under Section 523(a)(4).  *Id.* at 116.  This invoked a discussion of the Texas Construction Trust Fund Statute in which the Fifth Circuit cited *Boyle* for the premise that trust funds need not be kept in separate accounts.  *Id.* (citing *Boyle*, 819 F.2d at 592).  The Fifth Circuit, however, goes further to state that, as a general rule:

> "Nor must these funds be spent only on the project for which they were received—they may be spent on other projects or on expenses related to general business overhead."

*Id.*  Although the Fifth Circuit did not make a determination as to whether the Swors' debt was nondischargeable, it cited *Boyle* as providing the guiding principle that general business overhead expenses were permissible under the Texas Construction Trust Fund Statute.

It is therefore unclear exactly where the language of *Swor* leaves the Texas Construction Trust Fund Statute with respect to Section 523(a)(4).  The legislative history, combined with the case law of this District, acknowledge that the scope of the statute has expanded significantly from when it was first enacted.    The Fifth Circuit, in relying on language of the *Boyle* case, which was decided prior to the 1987 amendments, seems to favor a more restrictive approach.

Defendant, both in the original hearing on the merits and the hearing on his Motion for Reconsideration, argued that the case law allows trust funds to be comingled, and that this supports the notion that trust funds can be spent on general expenses of the corporation.  Indeed, this is first mentioned in *Boyle* when the Fifth Circuit noted that the statute does not allow a claim "if the contractor uses all the 'red' dollars loaned to pay bills arising from the 'yellow' project."  819 F.3d at 592.  This language is seen throughout the case law interpreting the Texas Construction Trust Fund Statute.  *See, e.g., Nicholas***, 956 F.2d at 113 (quoting *Boyle*); **Swor,** 347 Fed.Appx. at 115 at 117 ("Texas law permits contractors the mingling [of trust funds] that occurred here.").  The Court does not agree, however, with Defendant's position that allowing comingling of funds excuses Defendant from liability under the Texas Construction Trust Fund Statute.  In fact, the court in *Boyle* goes on to state that comingling of funds does not create a cause of action under the statute so long as the contractor ultimately spends the amount the contractor received on actual and direct expenses of the particular project for which the contractor was paid.  819 F.2d at 592 ("[The statute] does not allow a personal liability claim if the contractor uses all the 'red' dollars loaned to pay bills arising from the 'yellow' project *so long as he expends on the 'red' project an amount equal to the total of funds advanced*." (emphasis added)).  Comingling is permitted under the law, but a general contractor can still be liable under the statute if it does not ultimately either (1) pay the subcontractor the amount owed,

10

or (2) spend the amount owed to the subcontractor on actual and direct expenses of the project for which the subcontractor contributed materials.

In the case of a healthy corporation operating in the ordinary course, comingling presents no problem, as the general contractor has enough money to spend "red" trust funds on "yellow" projects while still having enough left over to spend on the project for which it received "red" dollars. When a general contractor spends "red" dollars on "yellow" projects and then files Chapter 7 and seeks to have debts to the subcontractor discharged, however, the Court can safely presume there is no intent to spend any more money on the "red" project. The bankruptcy general contractor does not satisfy the rule in *Boyle* that allows comingling so long as the general contractor ultimately spends the same amount on the project for which it received the funds. Debtor cannot use its ability to comingle funds as a defense to liability under the Texas Construction Trust Fund Statute.

The Court does concede, however, that *Swor* explicitly states that Texas law allows contractors to spend trust funds on "other projects or on expenses related to general business overhead." 347 Fed.Appx. At 116. The evidence provided by the parties in this case shows that the money Defendant received from the projects for which Plaintiff provided concrete was spent on bills of the corporation, including telephone bills, truck payments, salaries, and other expenses. These fall into the definition of other projects and general business overhead under the Fifth Circuit's interpretation of the Texas Construction Trust Fund Statute. The Court is therefore of the opinion that it must amend its prior judgment granting Plaintiff's Partial Motion for Summary Judgment.

This interpretation of the statute is troubling to the Court. The Court shares the same concerns the bankruptcy court shared in *Faulkner*. Under such a standard it becomes difficult to

11

determine what constitutes a violation of the statute.  Indeed, under this approach, the affirmative defense appears to swallow the statute itself.  Further, it allows general contractors to pick and choose who they pay prior to filing bankruptcy, going against the guiding principle that bankruptcy allows and orderly distribution of assets to creditors.[1]  Defendant argued at the hearing on his Motion for Reconsideration that the statute only applies in cases in which the general contractor takes funds out of the account and uses them for some illicit purpose, making payments on something outside of the corporation.  If this were the case, the statute would never have been amended to include culpable mental states other than "with intent to defraud." Further, the Bankruptcy Code already furnishes a remedy to creditors whose debts arise out of the debtor's fraudulent actions.[2]  11 U.S.C. § 523(a)(2) (West 2012).

The 1987 amendments, when taken in consideration with the statute's "broad remedial purpose," makes this argument unavailing.  Despite the broadened mental standard of the statute, however, the Circuit made it clear that the Texas Construction Trust Fund Statute should continue to be construed narrowly by the courts.  The Court will accordingly modify its judgment.  Because the parties both represented numerous times that there is no genuine issue of material fact in this case, either Plaintiff or Defendant is entitled to judgment as a matter of law. As a result, the Court must take the unusual step of taking summary judgment from one party and giving it to another.

IT IS THEREFORE ORDERED that Defendant's Amended Motion for Reconsideration is

---

[1] Such is the case here.  Defendant chose not to pay Plaintiff for the concrete provided because Plaintiff was "the big dog" who, in Defendants' judgment, could afford to carry the loss (ECF No. 30-1).

[2] Indeed, Plaintiff's Amended Complaint seeks judgment under Section 523(a)(2), alleging that Defendant, or someone at his direction, refused to remit payment until Plaintiff signed a lien release and represented that Defendant would pay Plaintiff upon signing the lien release (ECF No. 58).  Plaintiffs allege Defendant knew at the time Plaintiff signed the lien release that Defendant would never pay Plaintiff and therefore only sought to subordinate Plaintiff's priority lien status when he Defendant filed bankruptcy (*Id.*).  The Court makes no findings on Plaintiff's claim under Section 523(a)(2), nor on Plaintiff's claim under Section 523(a)(6), in this Memorandum Opinion.

GRANTED.  The Court's oral ruling in this matter is VACATED.  Plaintiff's Motion for Partial Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED IN PART with respect to Section 523(a)(4) only.  All other relief is DENIED.

###